FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 11 2017

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TONY L. WARE,                          *
                                       *
              Plaintiff,               *
      v.                               *      **CIVIL ACTION**
                                       *      **FILE NUMBER: 1:17-CV-01313-MHC**
PINE STATE MORTGAGE CORP.,             *
MORTGAGE ELECTRONIC                    *
REGISTRATION SYSTEMS, INC.,            *      **AFFIDAVITS ARE FILED IN SUPPORT**
                                       *
              Defendants.              *

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND THIS CASE BACK TO SUPERIOR COURT

**COMES NOW, Dr. TONY L. WARE** the Plaintiff in this action in the above-styled action against the Defendants in this action pursuant to **28 U.S.C. § 1447(c)** to remand this case back to the Superior Court of Fulton County due to lack of subject-matter jurisdiction. This Memorandum of Law filed in support of Plaintiff's motion to remand. The Plaintiff shows this Court the following:

### I. FACTUAL BACKGROUND

1. On August 12th, 2003, Mrs. Anonette Ferrell mortgaged the real property known as: 4002 Carisbrook Drive, Union City, Georgia 30291.

2. On August 12th, 2003, Mrs. Ferrell also closed on her mortgage loan with the Defendant, Pine State Mortgage Corporation by giving a Mortgage Note and conveying a Security Deed over to Defendant, Mortgage Electronic Registration Systems, Inc. also known as "MERS". See **Exhibit "C"** attached hereto.

3. That on August 12th, 2006, Mrs. Ferrell was rushed; tricked and fraudulently induced into singing over the Security Deed to Defendant, MERS. See Affidavit of Mrs. Ferrell at ¶¶ 1-18 filed in support of Plaintiff Motion to remand.

4. Mrs. Ferrell was original Grantor who signed the Security Deed. The Security Deed was recorded with the Clerk of Superior Court of Fulton County in Deed Book 35911, Page 374 filed on September 5th, 2003.

5. On August 12th, 2003, there were no notary public or witness present that actually saw or witness Mrs. Ferrell signed the Security Deed. See Affidavits.

6. The Security Deed was forged by adding the witness and notary public's signatures to the Security Deed without my knowledge and consent, because I never saw the notary public or witness. I was told by Pine State Mortgage Corporation's officer, agent and or attorney to just signed the documents in blank form.

7. Mrs. Ferrell did not know at the time that it was fraud for her to signed the Security Deed without a witness and notary public being present. See Affidavit.

8. Pine State Mortgage Corporation's officer, agent or attorney trick her into signing the Security Deed without a witness and notary public being present.

9. That Pine State Mortgage rush me into signing the Security Deed and other loan documents without giving me reasonable time to read them over.

10. Mrs. Ferrell was told by Pine State Mortgage's officers and agent to just sign the Security Deed and other loan documents and they will take care of the rest.

11. Had Mrs. Ferrell known then, that Pine State Mortgage were using her to help Defendant, Pine State Mortgage's officers or agents to commit fraud, she would not have never signed the Security Deed or any loan documents.  See Affidavits.

12. Defendant, Pine State Mortgage Corporation obtain the Security Deed from Mrs. Ferrell though acts of fraud, forgery and misrepresentations.

13. On January 23rd, 2017, Mrs. Ferrell conveyed her interest in the property to the Plaintiff as shown in the Special Warranty Deed.  See **Exhibit "D"** attached.

14.  That at the time of Mrs. Ferrell conveyance, neither Mrs. Ferrell or the Plaintiff knew of the Security Deed being a forgery and or that the Security Deed was obtain by fraud and misrepresentations by Defendant, Pine State Mortgage Corporation.  See Affidavit of Mrs. Ferrell at ¶¶ 1-18 filed in support of Motion.

15. The Plaintiff aver that under Georgia law, the Security Deed that was signed on August 12th, 2003 by Mrs. Antonette Ferrell given to Defendant, Mortgage Electronic Registration System, Inc. also known as "MERS" was forged by Defendant's Pine State Mortgage's officers and cannot pass title.

16. That that the Security Deed signed over to the MERS was also procured by fraud and misrepresentations made by Pine State Mortgage's officers; agents; servants; employees and attorneys at the time Mrs. Ferrell signed the security deed and prior to her closing of our loan.  The reason is because closing attorney never told Mrs. Ferrell about Mortgage Electronic Registration System, Inc. a/k/a "MERS."  There were no officers, agents or employees of MERS present at the time Mrs. Ferrell closed on her mortgage loan with Pine State Mortgage.

17. Moreover, Mrs. was never told that MERS would be the grantee of the Security Deed. As the Grantor, Mrs. Ferrell was never given ample time to read the Security Deed or to investigate MERS at the time she closed on her mortgage loan with the Pine State Mortgage Corp. See Affidavit of Mrs. Ferrell at ¶¶ 1-18.

18. Furthermore, Mrs. Ferrell never saw the notary or the witness who notarized and witnessed the Security Deed that was filed in the Clerk's office.

19. Pine State Mortgage Corporation, through its officers, agents, employees and attorneys changed a material part of the Security Deed concerning the signatures' page of the Security Deed by altering and intentionally changing signatures, by adding the signatures of both the witness and the Notary Public to the Security Deed's signature's page at a deferent day and time unknown to Mrs. Ferrell. See Affidavit of Mrs. Ferrell at ¶¶ 1-18.

20. Secondly, that at the time the Security Deed was signed by Mrs. Ferrell, the Pine State knew or should have known that the witness and notary public never signed the Security Deed on the same date and time Mrs. Ferrell signed it.

21. Nor did the witness or notary public actually witnessed Mrs. Ferrell signing the Security Deed. Pine State did suppress these misrepresentations.

22. Finally, the Security Deed was intentionally altered with the intent to deceive and defraud the general public in violation of **O.C.G.A. § 45-17-8(d)**, because Pine State knew or should have known that the witness and notary public are required to signed the Security Deed in the present of Mrs. Ferrell pursuant to Georgia law under **O.C.G.A. § 44-14-33**. Therefore, the Security Deed is void.

23. On March 13th, 2017, the Plaintiff brought this action for fraud; forgery, torts; Georgia RICO Act violations; bill of peace in equity under **O.C.G.A. 23-1-110** and quiet title to remove the Security Deed as a cloud upon Plaintiff's title pursuant to **O.C.G.A. § 23-4-40**. See Plaintiff's Complaint attached to Notice of Removal.

24. On March 13th, 2017, the Plaintiff personally served the Defendant, Pine State Mortgage Corporation by U.S. Certified Mail under **O.C.G.A. § 14-2-501**.

25. On March 14th, 2017, Michael T. Rivers, a Court-Appointed Process Server served both Defendants in this case through the Georgia Secretary of State pursuant to **O.C.G.A. § 9-11-4(e)(1)**. See **Exhibit "F"** Return of Service attached.

26. On April 12th, 2017, the Defendant, Mortgage Electronic Registration Systems, Inc. also known as "MERS" filed it Notice of Removal pursuant to **28 U.S.C. § 1441(a)** based upon a federal question under **28 U.S.C. § 1331** and diversity under **28 U.S.C. § 1332**. See Notice of Removal.

27. On April 14th, 2017, the Plaintiff filed with the District Court after Defendant MERS' removal, Plaintiff's partial dismissal of all Federal claims as his Federal RICO claims were named in error. Therefore, that are no federal question claims stated in Plaintiff's Complaint that gives this Court jurisdiction.

28. The Defendant MERS made an appearance in this action by filing a Motion for Extension of Time to respond to Plaintiff's Complaint.

29. This District Court erroneously granted the Defendant's motion for extension of time without giving Plaintiff an opportunity to respond or object.

30. On May 10th, 2017, the Defendant MERS filed their Motion to dismiss.

## II. PLAINTIFF'S GROUNDS FOR REMAND

1. This Court lacks subject-matter jurisdiction over this case because there is no Federal question jurisdiction pursuant **28 U.S.C. § 1331.** See also Plaintiff's Partial Dismissal filed on April 14th, 2017 as **Exhibit "A"** attached.

2. This Court lacks subject-matter jurisdiction over this case because there is no complete diversity pursuant **28 U.S.C. § 1332.** Because there is a lack of complete diversity of the parties this case must be remanded back to State Court.

3. Finally, this Court lacks subject-matter jurisdiction over this case because the Magistrate Court has obtained pending in rem jurisdiction in *Ware v. Pine State Mortgage Corp, MiFirst Bank & MERS*, Civil Action File No. 17ED022452 (2017).

4. In support of Plaintiff's Motion for Remand that this Court lacks subject-matter jurisdiction concerning this quiet title action, this Court lacks in rem jurisdiction over the Magistrate Court's in rem jurisdiction according to Georgia law under **O.C.G.A. § 44-7-50(a).** See **Exhibit "B"** attached to Motion for Remand.

## III. ARGUMENT AND CITATION OF AUTHORITY

### (A). *There Is No Federal Questions Jurisdiction*

1. The Plaintiff argues that this Court clearly lacks subject-matter jurisdiction over this case because there is no Federal question jurisdiction pursuant **28 U.S.C. § 1331.** The Plaintiff's mistakenly used the words *"GEORGIA AND FEDERAL RICO RACKETEERING".* These words were referred to in error stated in Count VII ¶ 53 of the Complaint against the Defendants.

2. The Plaintiff only meant to state a claim under Georgia RICO Act pursuant to **O.C.G.A. § 16-14-1**. The Plaintiff were stricken and dismissed by the Plaintiff concerning all Federal claim without prejudice and stated in his Notice of Partial Dismissal that any and all reference with respect to any other federal claims stated in the Complaint as a matter of right. See Docket. All other State law claims stated in the Complaint shall remain in full force and effect.

3. Therefore, Defendant's MERS' removal based upon Federal question jurisdiction based upon **28 U.S.C. § 1331** is now rendered moot due to Plaintiff's partial dismissal under **Fed.R.CivP. 41(a)(1)(A)(i)** and this Court lacks subject-matter matter jurisdiction over this case as a matter of law.

### (B). *There Is No Complete Diversity Jurisdiction*

4. This Court lacks subject-matter jurisdiction over this case because there is no complete diversity pursuant **28 U.S.C. § 1332.** Because there is a lack of complete diversity of the parties this case must be remanded back to State Court.

5. An action filed in State Court may be removed to federal court based upon diversity or federal question jurisdiction. See **28 U.S.C. § 1441(a)(b).**

6. Diversity will not support removal jurisdiction, however, if any of the properly joined defendants are citizens of this State in which the suit was originally filed. See Id. **28 U.S.C. § 1441(b).** In this case, Defendant, Pine State Mortgage Corporation is properly joined in this action because it was the entity that attempted to originate the original Security Deed that Mrs. Antonette Ferrell signed. However, this Security Deed was later forged. See Affidavit of Mrs. Ferrell.

7. It is clear that Plaintiff's claim upon a reading of the Complaint that Plaintiff's claim that the Security Deed cast a cloud upon his title pursuant to **O.C.G.A. § 23-3-40** is dependent upon his claim that Defendant, Pine State Mortgage Corporation officers, agents and attorneys forged the Security Deed and that Defendant, MERS had no title at all to assign or covey to a third person.

8. Thus under Georgia law the Georgia Supreme Court has held that a forged Security Deed cannot not pass any legal title a grantee, because the grantor has no title to convey. See, _Vatacs Group, Inc. v. U.S Bank, N.A._, 292 Ga. 483, 738 SE 2d 83 (2013); _Aurora Loan Svcs. v. Veatch_, 288 Ga. 808, 809, 710 S.E.2d 744 (2011) (_"It is settled law that a forged deed is a nullity and vests no title in a grantee"_).

10. Since Plaintiff's quiet title action is brought against Pine State Mortgage Corporation for acts of forgery pursuant to **O.C.G.A. § 23-3-40** in order to remove the Security Deed as a cloud upon his title based upon Pine State Mortgage's fraud; forgery and misrepresentations, Defendant, Pine State Mortgage Corporation is actually the real party Defendant at interest pursuant to **Fed.R.CivP. 17.**

11. Notwithstanding the above, both Defendant, Pine State Mortgage and Defendant, MERS are indispensable parties to this case under **Fed.R.CivP. 19.**

12. Removal of this case by Defendant MERS was improper. MERS bears the burden of showing Federal jurisdiction and to demonstrate that diversity exists by a preponderance of the evidence. See _McCormick v. Aderholt_, 293 F.3d 1254, 1257 (11th Cir.2002) (citing _Scoggins v. Pollock_, 727 F.2d 1025, 1026 (11th Cir.1984)).

13. Defendant MERS is a proper party as it proports to hold title under the terms of the Security Deed as "nominee" for the "Lender" who Defendant, Pine State Mortgage Corporation. See Security Deed **Exhibit "C"** attached hereto.

14. As with other courts that have found collateral issues of Federal law to be insufficient to confer federal jurisdiction over a suit otherwise exclusively based in state law, our holding reflects the concern that whole classes of State law actions should not be federalized by the mere presence of a federal issue.

15. This concern has been most clearly expressed in cases involving actions to establish title to land in which the plaintiff must trace the source of the title to federal laws or treaties. See _Shulthis v. McDougal_, 225 U.S. 561, 32 S.Ct. 704, 6 L.Ed. 1205 (1912); _Shoshone Mining Co. v. Rutter_, 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900); _Mobil Oil Corp. v. Coastal Petroleum Co._, 671 F.2d 419 (11th Cir.1982); Mays v. Kirk, 414 F.2d 131 (5th Cir.1969); _Huckins v. Duval County, Fla._, 286 F.2d 46 (5th Cir.1960). The Courts of Appeals deciding this issue have uniformly held that, for diversity purposes, Courts should also consider only the United States citizenship of individuals who are dual citizens. See, e.g., _Sanchez v. Aerovias De Mex., S.A. De C.V._, 590 F.3d 1027, 1028 n. 1 (9th Cir. 2010); _Frett-Smith v. Vanterpool_, 511 F.3d 396, 399-400 (3d Cir.2008); _Coury v. Prot_, 85 F.3d 244, 250 (5th Cir.1996); Action S.A. v. Marc Rich & Co., 951 F.2d 504, 507 (2d Cir.1991); _Sadat v. Mertes_, 615 F.2d 1176, 1187 (7th Cir.1980); see also _Von Dunser v. Aron_off, 915 F.2d 1071, 1073-76 (6th Cir.1990) (agreeing with Sadat's reasoning, but finding no occasion to so hold because the facts regarding the parties' domicile

were unclear and required remand); _Las Vistas Villas, S.A. v. Petersen_, 778 F. Supp. 1202, 1204 (M.D.Fla. 1991), aff'd 13 F.3d 409 (11th Cir.1994).

16. Therefore, diversity jurisdiction requires fully diverse citizenship of the parties and an amount in controversy over $75,000, assessed at the time of removal. See, _Ehlen Floor Covering, Inc. v. Lamb_, 660 F.3d 1283, 1287 (11th Cir. 2011); see also 28 U.S.C. § 1332(a). Because there is a lack of complete diversity in this action and Defendant MERS removal of this case along with Defendant Pine State Mortgage Corporation, this Court clearly lacks jurisdictional.

### (C). _MERS' Fraudulent Joinder Claim Is Frivolous_

17. MERS' fraudulent joinder claim is clearly frivolous as a matter of law. First, Pine State Mortgage Corporation as an administratively dissolved corporation retains it legal existence for the purpose of any contingences claims against it. See **O.C.G.A. § 14-2-1421(c)** _("(c) A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under Code Section 14-2-1405")._

18. Thus, Defendant Pine State still exist for the purpose of Plaintiff's claims with respect to this action. Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity. Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. _Coker v. Amoco Oil Co._, 709 F.2d 1433, 1440 (11th Cir.1983), superceded by statute on other grounds as stated in _Georgetown Manor, Inc. v. Ethan Allen_,

Inc., 991 F.2d 1533 (11th Cir.1993). The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. Coker, 709 F.2d at 1440.

19. In *Tapscott*, 77 F.3d at 1355 (11th Cir.1996), a third situation of fraudulent joinder was identified, i.e., where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. Id. at 1360.

20. In this case, Defendant MERS argue that the Plaintiff has fraudulently joined Defendant, Pine State Mortgage Corporation as a defendant in order to defeat diversity jurisdiction. MERS has filed no evidence that support this claim.

21. "*In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.*" See Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir.1997) (citing Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir.1989)).

22. The burden of establishing fraudulent joinder is a heavy one. Where the Plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to State court. See id.; Cabalceta, 883 F.2d at 1562. The determination of whether a resident defendant has been fraudulently joined must be based upon the Plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.

23. In making its determination, the District Court must evaluate factual allegations in the light most favorable to the Plaintiff and resolve any uncertainties about the applicable law in the Plaintiff's favor. Id.

24. Therefore, this Court must conclude that the Defendant's MERS failed to show that the Plaintiff cannot state an arguable cause of action for quiet title against the resident defendant, Pine State Mortgage Corporation and cannot say that the Georgia Pine State were fraudulently joined.

### (D). *Plaintiff's Is A Bona Fide Purchaser Without Notice*

25. Moreover, even if Defendants could attack Plaintiff's title, Plaintiff's title was superior to that of MidFirst's unrecorded deed pursuant to **O.C.G.A. § 44-2-1.**

26. According to Georgia law, under **O.C.G.A. § 44-2-1,** a prior unrecorded deed loses it priority over a subsequent recorded deed. **O.C.G.A. § 44-2-1** reads:

> **"Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land is located. A deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the existence of the prior deed."**

27. The Plaintiff received his Special Warranty Deed from Mrs. Antonette Ferrell on January 23rd, 2017 without notice of Defendant MidFirst's unrecorded deed under power. The Plaintiff recorded his Special Warranty Deed with the Clerk of Superior Court on January 24th, 2017. See **Exhibit "D"** attached hereto.

28. The Defendant MidFirst appears to have received its Deed Under Power on December 16th, 2016 and recorded its deed under power with the Clerk of Court on February 1st, 2017. See **Exhibit "E"** attached hereto.

Page 12 of 17

29. The Plaintiff had no actual or constructive notice of MidFirst's unrecorded deed until it was actually filed with the Clerk of Superior Court on February 1st, 2017, well after this dispossessory action had begun. At the time, Plaintiff filed his dispossessory action, he was the owner of said property, because MidFirst had no interest in the property until it filed its unrecorded deed. See **O.C.G.A. § 44-2-2(b).**

30. Georgia law under **O.C.G.A. § 44-2-2(b)** reads as follows:

> **"(b) Deeds, mortgages, and liens of all kinds which are required by law to be recorded in the office of the clerk of the superior court and which are against the interests of third parties who have acquired a transfer or lien binding the same property and who are acting in good faith and without notice shall take effect only from the time they are filed for record in the clerk's office."**

31. The Georgia Supreme Court in *Leeds Bldg. Prod. v. Sears Mortg. Corp.*, 267 Ga. 300, 477 S.E.2d 565 (1991) has stated:

> **"O.C.G.A. § 44-2-1 requires that a deed conveying land be recorded in the office of the clerk of the superior court in which the land is located. A deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the existence of the prior deed. Id. Thus, the filing and recordation of an instrument provides constructive notice to subsequent purchasers of the existence of a prior interest in the property. O.C.G.A. § 44-2-2(b)."**

32. Moreover, MidFirst could did not have any legal interest in the real property until it filed its unrecorded deed with the Clerk of Superior Court pursuant to **O.C.G.A. § 44-2-2(b).** See **Exhibit "E"** attached hereto.

33. The Georgia Supreme Court stated further in *Leeds* supra as follows:

> **"Such interests take effect only from the time they are filed for record in the clerk's office. O.C.G.A. § 44-2-2(b)."**

34. Therefore, the evidence is clear that that Plaintiff had no actual or constructive notice of MiFirst's deed under power until was filed with the Clerk.

36. Thus Plaintiff conclude that the evidence shows that Plaintiff's title, the "Special Warranty Deed" had priority as it superior over MidFirst's title, the "Deed Under Power" pursuant to **O.C.G.A. § 44-2-1** and Plaintiff is therefore legal owner of the property according to Georgia law.  See **Exhibit "D"** attached hereto.

### (E). *Plaintiff's Is A Bona Fide Purchaser Without Notice*

37. Finally, this Court lacks subject-matter jurisdiction over this case because the Magistrate Court has obtained pending in rem jurisdiction in *Ware v. Pine State Mortgage Corp, MiFirst Bank & MERS*, Civil Action File No. 17ED022452 (2017).

38. In support of Plaintiff's Motion for Remand that this Court lacks subject-matter jurisdiction concerning this quiet title action, this Court lacks in rem jurisdiction over the Magistrate Court's in rem jurisdiction according to Georgia law under **O.C.G.A. § 44-7-50(a)**.  See **Exhibit "B"** attached to Motion for Remand.

39.  As stated above this Court is barred by the "prior exclusive jurisdiction" doctrine.  The Plaintiff contend that this Court must remanded this Quiet Title Action back to State Court due to this lack of jursidciton.

40.  The prior exclusive jurisdiction doctrine holds that *"when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res."*  See Marshall v. Marshall, 547 U.S. 293, 311, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006); see also *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466-67, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

41. *"Although the doctrine is based at least in part on considerations of comity and prudential policies of avoiding piecemeal litigation, it is no mere discretionary abstention rule. Rather, it is a mandatory jurisdictional limitation."* See *State Eng'r v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians*, 339 F.3d 804, 810 (9th Cir.2003) (citations and internal quotation marks omitted).

42. The United States Supreme Court has long held in *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922) the following to wit:

> **"Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction."**

43. The State Magistrate Court obtain jurisdiction over the res first on January 25th, 2017 pursuant to O.C.G.A. § 44-7-50(a), the dispossessory action. See Exhibits "G" & "H" attached hereto. When applying the doctrine, courts should not *"exalt form over necessity,"* but instead should *"look behind the form of the action to the gravamen of a complaint and the nature of the right sued on."* State Eng'r, 339 F.3d at 810 (internal quotation marks omitted). If the action is not *"strictly in personam"* that is, if the action is in rem or quasi in rem—then the doctrine ordinarily applies. Id. at 811 (quoting *Penn. Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935)). There is a lack jurisdiction in this case this case must be remanded back to the State Court.

**WHEREFORE,** the Plaintiff hereby move this Court to remand this case back to the Superior Court of Fulton County due to lack of subject-matter jurisdiction pursuant to **28 U.S.C. § 1447(c)** as relief to the Plaintiff.

**Respectfully submitted this** _____11th_____ **, day of May 2017.**

**Dr. Tony L. Ware, PhD, JD, PRO SE**
**Attorney for the Plaintiff**

**P.O. Box 150525-Dept. 0227**
**Atlanta, Georgia 30315-0188**
**(404) 944-9638 (Phone)**
**(404) 601-0813 (Fax)**
**Email: tonylware@yahoo.com**

## CERTIFICATE OF SERVICE

**COMES NOW, Dr. TONY L. WARE, PhD, JD,** the Plaintiff in the above-styled civil action and hereby certify that I have served the Defendant's counsel with Plaintiffs' MOTION TO REMAND CASE BACK TO SUPERIOR COURT by U.S. First Class Mail with proper postage thereon at the following address to wit:

> Ms. Betsy Neal Burns, Esq.
> Baker, Donelson, Bearman, Caldwell & Berkowitz
> Suite 1600, Monarch Plaza
> 3414 Peachtree Road, NE
> Atlanta, Georgia 30326

**Respectfully submitted this _____11th_____ , day of May 2017.**

**Dr. Tony L. Ware, PhD, JD, PRO SE**
**Attorney for the Plaintiff**

**Please Mail all Notices to:**

**Dr. Tony L. Ware, PhD, JD**
**P.O. Box 150525-Dept. 0227**
**Atlanta, Georgia 30315-0188**
**(404) 944-9638 (Phone)**
**(404) 601-0813 (Fax)**
**Email: tonylware@yahoo.com**

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

# EXHIBIT "C"

Attached hereto

Deed Book 35911 Pg  374
Filed and Recorded Sep-05-2003 09:17am
2003-0304217
Georgia Intangible Tax Paid $361.50
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

After Recordation Return to:

Haley & Haley Attorneys, LLC
The Crown Center -- Suite 162
395 Phoenix Boulevard
College Park, GA 30349

C03667

[Space Above This Line For Recording Data]

**State of Georgia**
**AP# 3150300079**
**LN# 00000000000000**

# SECURITY DEED

FHA Case No.
105-1144547-703

MIN 1000321-0000022777-5

THIS SECURITY DEED ("Security Instrument") is given on          August 12, 2003
The Grantor is ANTONETTE FERRELL

, and whose address is

1190 JOHNSON RD., SENOIA, GA 30276

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc., ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS.
PINE STATE MORTGAGE CORPORATION, A GEORGIA CORPORATION

("Lender") is organized and existing under the laws of          GEORGIA          , and
has an address of 6065 ROSWELL ROAD SUITE 120, ATLANTA, GA 30328

FHA Georgia Security Deed with MERS - 4/96
4N(GA) (0210)          Amended 2/01
Page 1 of 8      MW 10/02          Initials:
VMP MORTGAGE FORMS - (800)521-7291


EXHIBIT
"C"
tabbies

Deed Book 35911 Pg 375

Borrower owes Lender the principal sum of   One Hundred Twenty Thousand Two Hundred Fifty
and no/100                                  Dollars (U.S. $ 120,250.00              ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
     September 1, 2033          . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of
all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c)
the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this
purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors
and assigns), and the successors and assigns of MERS, with power of sale, the following described property located
in                                          FULTON                                          County, Georgia:

PLEASE SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE.

                                                                                    [Street]
which has the address of 4002 CARISBROOK DRIVE
UNION CITY                                   [City], Georgia    30291    [Zip Code] ("Property Address");

     TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors
and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter
erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All
replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the
interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as
nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests,
including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing or canceling this Security Instrument.
     BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
     Borrower and Lender covenant and agree as follows:
     UNIFORM COVENANTS.
     1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.
     2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,
                                                                                    Initials: ___

4N(GA) (0210)                    Page 2 of 9

Deed Book 35911 Pg 376

in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

Initials:

4N(GA) (0210)                                   Page 3 of 8

Deed Book 35911 Pg 377

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Initials: _____

-4N(GA) (0210)                                         Page 4 of 8

Deed Book 35911 Pg 378

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Initials: _af_

4N(GA) (0210)                    Page 5 of 8

Deed Book 35911 Pg 379

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

4N(GA) (0210)                    Page 6 of 8

Deed Book 35911 Pg 380

18. Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

21. Assumption not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

22. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☒ Other [specify]
☒ Planned Unit Development Rider   ☐ Graduated Payment Rider   Closing Attorney's Affidavit
                                                              And Waiver of Borrower's Rights

-4N(GA) (0210)                    Page 7 of 8                  Initials: __

Deed Book 35911 Pg 381

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____ (Seal)
ANTONETTE FERRELL                    -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                                -Borrower

Notary Public,                       County

4N(GA) (0210)                        Page 5 of 5

Deed Book 35911 Pg 382

LOAN NO. 0000000000000

## FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 12th day of August, 2003 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to PINE STATE MORTGAGE CORPORATION, A GEORGIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

4002 CARISBROOK DRIVE, UNION CITY, GA 30291
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

BRENTWOOD PLACE S/D

[Name of Planned Unit Development]

PUD COVENANTS.   In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled hereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this Paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (SEAL)
ANTONETTE FERRELL              Borrower

_____ (SEAL)
                              Borrower

_____ (SEAL)
                              Borrower

_____ (SEAL)
                              Borrower

FHA Case No.   105-1144547-703
4/92

ISC/FPUDRID**//1192/(0492)-L

Deed Book **35911** Pg **383**

```
FHA Case No.
105-1144547-703
```

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this    12th    day of    August    ,   2003   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to   PINE STATE MORTGAGE CORPORATION, A GEORGIA CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

4002 CARISBROOK DRIVE, UNION CITY, GA 30291
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Date
The interest rate may change on the first day of    January    ,   2005   , and on that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

(B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. As used in this Rider, "Secretary means the Secretary of Housing and Urban Development or his or her designee." Lender will give Borrower notice of the new Index.

FHA Multistate ARM Rider – 10/95
-591 (9601)        MW 01/96
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3        Initials:

Deed Book 35911 Pg 384

**(C) Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of Two percentage point(s) ( 2.0000 %) to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in paragraph (D) of this Rider, this rounded amount will be the new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**
The existing interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate, as stated in Paragraph 2 of the Note.

**(E) Calculation of Payment Change**
If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

**(F) Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

**(G) Effective Date of Changes**
A new interest rate calculated in accordance with paragraphs (C) and (D) of this Rider will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by paragraph (F) of this Rider. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with paragraph (E) of this Rider for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with paragraph (E) of this Rider decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if the Note is otherwise assigned before the demand for return is made.

591(9601)                              Page 2 of 3                              Initials

Deed Book 35911 Pg 385

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
-Borrower

_____ (Seal)
ANTONETTE FERRELL        -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

-891(9601)

Page 3 of 3

C03657

**EXHIBIT A**

Deed Book 35911 Pg  386

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 83 OF THE 9F DISTRICT, OF FULTON COUNTY, GEORGIA, AND BEING LOT 81, OF BRENTWOOD PLACE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 237, PAGE 29 OF FULTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

Deed Book 35911 Pg 387
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

GEORGIA -

GRANTOR: ANTONETTE FERRELL

LENDER: PINE STATE MORTGAGE CORPORATION, A GEORGIA CORPORATION

DATE OF SECURITY DEED: August 12, 2003

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____ (Seal)
ANTONETTE FERRELL          -Grantor

_____ (Seal)
                           -Grantor

_____ (Seal)
                           -Grantor

_____ (Seal)
                           -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me _____ on the date set forth above.

_____
                           Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
ANTONETTE FERRELL

_____     _____

960(GA) (9401).02    NW 81/84.92         VMP MORTGAGE FORMS - (800)521-7291                          1/94

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

# EXHIBIT "D"

## Attached hereto

Deed Book 57110 Pg 340
Filed and Recorded Jan-24-2017 02:55pm
2017-0011017
Real Estate Transfer Tax $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

**PLEASE RETURN TO:**

Dr. TONY L. WARE, PhD, JD
ATLANTA LEGAL RESEARCH GROUP
P.O. Box 150524-Dept. 0227
Atlanta, Georgia 30315-0188

---

STATE OF GEORGIA     )
                   ) SS.         RE: Deed Book: 35911 Page 373

COUNTY OF FULTON    )

## SPECIAL WARRANTY DEED

THIS INDENTURE, is made on this __23RD__ day of **January** in the year of our lord, Two Thousand and Seventeen by and between: **ANTONETTE FERRELL** in the County of Fulton of the State of Georgia, as party or parties of the first part, (hereinafter called the "Grantor") and **TONY L. WARE** in the County of DeKalb as party of the second part, (hereinafter called Grantee). The words "Grantor(s)" and "Grantee(s)" to include their respective heirs, successors and assigns where the context requires or permits.

### WITNESSETH:

For good and valuable consideration and the sum of TEN DOLLARS AND N0/00 received, the undersigned, is **ANTONETTE FERRELL** the holder of the Warranty Deed recorded in **Deed Book 35911 page 373** in the Superior Court of Fulton County, Georgia (herein referred to as the "Grantor") whose address is: **4002 Carisbrook Drive, Union City, Georgia 30291** do hereby grant, sell, assign, transfer and convey title over to **TONY L. WARE** (herein referred to as the "Grantee"). The Grantee shall have all rights, interest and title in said real property as stated in the Warranty Deed recorded in **Deed Book 35911 page 373** filed with the Clerk of Superior Court. This deed shall vest full title to Grantee with all rights and interest in the real property notwithstanding any other deed and it shall also apply to the Grantee's successors and assigns concerning the following real property situated in Fulton County. That said property is more fully described herein as follows:

> **All that tract or parcel of land lying and being in Land Lot 83 of the 9F District, of Fulton County, Georgia, and being Lot 81, of Brentwood Place Subdivision, as per plat recorded in Plat Book 237, Page 29 of Fulton County, Georgia Records, which plat is incorporated herein and made a part hereof by reference. Said legal description being controlling, however, the Property is more commonly known as: 4002 Carisbrook Drive, Union City, Georgia 30291.**

**TO HAVE AND TO HOLD** the same unto said Grantee and Assignee, their successors and assigns, forever, subject only to the terms and conditions of the above-described in this assignment and the real property stated herein.

Quitclaim Deed Page 1 of 3

EXHIBIT
"D"

Deed Book 57110 Pg 341

**IN WITNESS, HEREOF**, the undersigned Grantor and Witness hereby sign and seal this Special Warranty deed and certify under oath by affixing their signature hereto.

**Attested By:**

**Antonette Ferrell,**
**GRANTOR.**

**Witnessed By:**

**Unofficial Witness**

**Sworn to and subscribe Before Me**
**This 23rd , day of January 2017.**

**NOTARY PUBLIC**

SEAL

TYRONDA MARIE JORDAN
Notary Public - State of Georgia
Fulton County
My Commission Expires Nov 9, 2019

Quitclaim Deed Page 2 of 3

**PLEASE RETURN TO:**

Dr. TONY L. WARE, PhD, JD
ATLANTA LEGAL RESEARCH GROUP
P.O. Box 150524-Dept. 0227
Atlanta, Georgia 30315-0188

Deed Book 57110 Pg 342

# GRANTOR'S

# EXHIBIT "A"

## Copy of:
## Warranty Deed

## Attached hereto



Deed Book 57110 Pg 343
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Deed Book 35911 Pg 373
Filed and Recorded Sep-15-2003 09:17am
2003-0304216
Real Estate Transfer Tax $182.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

JOHN K. HALEY
HALEY & HALEY L.L.C
ONE CROWN CENTER
1895 PHOENIX BLVD. SUITE 162
COLLEGE PARK, GA. 30349

# WARRANTY DEED

STATE OF GEORGIA

COUNTY OF GWINNETT

THIS DEED, made this ___12th___ day of ___August___, in the Year of Our Lord
Two Thousand Three (2003) between

BOWEN BUILDERS GROUP, INC.                                    ("Grantor")

and

ANTOINETTE FERRELL                                           ("Grantee")

(The words Grantor and Grantee to include their respective heirs, successors and assigns where the context hereof requires or permits).

WITNESSETH THAT: Grantor for and in consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable considerations, in hand paid at and before the sealing and delivery of these presents, the receipt, adequacy and sufficiency of which being hereby acknowledged by Grantor, has granted, bargained, sold and conveyed, and by these presents does hereby grant, bargain, sell and unto Grantee, the following described real property, to wit: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 83 OF THE 9F DISTRICT, OF FULTON COUNTY, GEORGIA, AND BEING LOT 81, OF BRENTWOOD PLACE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 257, PAGE 23 OF FULTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

Subject to easements, conditions and restrictions of record affecting the herein described property.

TO HAVE AND TO HOLD the above-described tract or parcel of land, together with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of Grantee, forever, in FEE SIMPLE.

AND, SUBJECT TO the title matters expressly set forth hereinabove, if any, Grantor will warrant and forever defend the right and title to the above-described tract or parcel of land unto the Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, Grantor has signed and sealed this Deed the day and year first above written.

BOWEN BUILDERS GROUP, INC.

BY: _____ (SEAL)
MIMI RITCHEY, SECRETARY

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public
My Commission Expires:

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

# EXHIBIT "E"

Attached hereto

Fulton County Superior Court
***EFILED***WW
Date: 3/14/2017 3:53:05 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

TONY L. WARE,                           *
                                        *
            Plaintiffs,                 *
                                        *       CIVIL ACTION
v.                                      *       FILE NUMBER: 2017CV287258
                                        *
PINE STATE MORTGAGE CORP.,              *
MORTGAGE ELECTRONIC                     *
REGISTRATION SYSTEMS, INC.,             *
                                        *       RETURN OF SERVICE OF PROCESS
            Defendants.                 *

---

## RETURN OF SERVICE OF PROCESS

**COMES NOW, MICHAEL T. RIVERS,** a Court-Appointed Permanent Process Server pursuant to O.C.G.A. § 9-11-4(c)(4)(5) in the above-styled civil action and I do hereby certify under oath the following to wit:

1. That on March 13TH, 2017, I personally and properly served the above-named Defendant, PINE STATE MORTGAGE CORP with Summons, Complaint and Discovery for by serving Mr. Brian Kamp, Georgia Secretary of State as Defendant's authorized agent located at: 2 Martin Luther King Jr. Dr. S.W., Suite 313, Atlanta, Georgia 30334-1530 pursuant to O.C.G.A. § 9-11-4(e)(1).

2. That on March 13TH, 2017, I personally and properly served the Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. with Summons, Complaint and Discovery by serving Mr. Brian Kamp, Georgia Secretary of State as Defendant's authorized agent located at: 2 Martin Luther King Jr. Dr. S.W., Suite 313, Atlanta, Georgia 30334-1530 pursuant to O.C.G.A. § 9-11-4(e)(1).

**Return of Service Page 1 of 2**

EXHIBIT
"E"

3. I hereby state that prior to me serving each corporate Defendant stated in this action with Summons; Complaint and Discovery through the Georgia Secretary of State, I made a due diligent search looking for each Defendant's last known registered agent listed on the record of the Georgia Secretary of State's office.

4. That I found neither corporate Defendant in this action can be served with Summons; Complaint and Discovery with due diligent and have either concealed themselves so as to evade service of process within the jurisdiction of this State.

5. Therefore, I believe that all service of process in this action is proper.

**IN WITNESS AND TESTIMONY HEREOF,** I make this Return of Service of Process as evidence to the Court as my duty as a Court-Appointed Permanent Process Server for the State of Georgia. See **Exhibit "A"** attached hereto.

This ___14th___ , day of ___MARCH___ , 2017.

**Respectfully Submitted,**

Michael T. Rivers, Court-Appointed
**Permanent Process Server**

**CERTIFICATE OF NOTARY PUBLIC**

**Sworn to and Subscribed before Me,**

This ___14th___ day of ___MARCH___ , 2017.

___Marvin Wooley___
**STATE NOTARY PUBLIC**

**Return of Service Page 2 of 2**

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

# EXHIBIT "F"

Attached hereto

Deed Book 57128 Pg 258
Filed and Recorded Feb-01-2017 04:14pm
2017-0018711
Real Estate Transfer Tax $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

After recording, return to:
Campbell and Brannon, LLC
5565 Glenridge Connector, Suite 350
Atlanta, GA 30342

## DEED UNDER POWER

This Indenture, made as of the 6th day of December, 2016, by Antonette Ferrell, hereinafter referred to as "Maker", through Maker's duly appointed agent and Attorney-in-Fact, MidFirst Bank, hereinafter referred to as "Party of the First Part", and MidFirst Bank, hereinafter referred to as "Party of the Second Part",

### WITNESSETH:

Whereas, said Maker executed and delivered to Mortgage Electronic Registration Systems, Inc., as nominee for Pine State Mortgage Corporation, A Georgia Corporation, a certain Security Deed, hereinafter referred to as the "Security Deed", dated 8/12/2003, recorded in Deed Book 35911, beginning at page 374, Fulton County, Georgia Deed Records, conveying the property described in Exhibit "A" to secure payment of a promissory note of even date therewith, and

Whereas, said Security Deed was Subsequently transferred and assigned to Party of the First Part, and

Whereas, the indebtedness secured by said Security Deed became in default, and

Whereas, by reason of said default, Party of the First Part, pursuant to the terms of said Security Deed and note declared the entire secured indebtedness due and payable, and

Whereas, the entire secured indebtedness being in default, Party of the First Part on behalf of said Maker as Maker's Attorney-in-Fact, and according to the terms of said Security Deed and the laws of the State of Georgia, did legally and properly advertise said property for sale once a week for four (4) consecutive weeks immediately preceding the said foreclosure sale in the official newspaper in which the Sheriff of said county publishes legal advertisement, and

Whereas, notice of said sale was given in compliance with Georgia Laws 1981, Volume I, Page 834, codified as Official Code of Georgia Annotated Section 44-14-162.2, and Section 44-14-162.4. The notice required was rendered by mailing a copy of the Notice of Sale Under Power that was submitted to the publisher of the legal organ of the aforementioned county, to the Maker and any other "Debtor" (as defined by O.C.G.A. § 44-14-162.1) at least thirty (30) days prior to the foreclosure sale date, and

Whereas, said Party of the First Part as Attorney-in-Fact pursuant to the powers contained in said Security Deed and the laws of the State of Georgia did expose said land for sale to the highest and best bidder for cash on the first Tuesday in December, 2016, within the legal hours of sale at the usual place of conducting Sheriff's sales in said county, and offered said property for sale at public outcry to the highest bidder for cash, when and where the said Party of the Second Part bid the sum of $ 102,850.00, which was the highest and best bid, and

EXHIBIT

tabbies'

"F"

Deed Book 57128 Pg 259

DUP - Antonette Ferrell aka Antonette Green aka Antonette Ferrell Green aka Antoenette Ferrell
Page -2-

Whereas, Exhibit "B" attached hereto and made a part hereof, contains the information required pursuant to Official Code of Georgia Annotated Section 44-14-14, and

Whereas, said land was sold to said Party of the Second Part for the above-stated price,

Now, Therefore, in consideration of said above-stated price and by virtue of and in the exercise of the power of sale contained in the aforesaid Security Deed, the Party of the First Part as Attorney-in-Fact for said Maker has bargained, sold and conveyed and by these presents does hereby bargain, sell and convey unto the Party of the Second Part and said Party's heirs, successors, representatives and assigns the property set forth in the attached Exhibit "A", which exhibit is made a part hereof by reference, together with all the rights, members and appurtenances thereto.

To Have and To Hold the said premises and every part hereof unto the said Party of the Second Part and said Party's heirs, executors, successors and assigns in as full and ample a manner as the said Maker and said Maker's heirs, successors, and assigns did enjoy and hold the same.

This conveyance is made subject to the following insofar as they affect title to said property, to-wit: All restrictive covenants, easements, and rights of way; all matters of zoning; matters which would be disclosed by an accurate survey and inspection of the property; all outstanding and/or unpaid taxes, including ad valorem taxes, which constitute liens upon said property; all outstanding or unpaid bills, charges, expenses and assessments for street improvements, curbing, garbage, water, sewage, and public utilities; and any other matters of record superior to said Security Deed.

In Witness Whereof, the said Party of the First Part, as Agent and Attorney-in-Fact for said Maker, has hereunto affixed its hand and seal, on this 5 day of December, 2016, to be effective as of the date first written above.

Signed, sealed and delivered
in the presence of:                                MidFirst Bank

Unofficial Witness                          By: _____ (SEAL)
                                            Name:        Blake Corgan
                                            Title:        Vice President

Notary Public as a Second                   Attest: _____ (SEAL)
Witness (My Notary Commission               Name:        Nicole Bruxvoort
Expires: 02-04-18 )                         Title:        Asst. Secretary
(Place Notary Seal Here)
Valerie Wilkerson                           (Place Corporate Seal Here)

Deed Book 57128 Pg 260

Antonette Ferrell aka Antonette Green aka Antonette Ferrell Green aka Antoenette Ferrell/16-4386

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 83 of the 9F District, of Fulton County, Georgia, and being Lot 81, of Brentwood Place Subdivision, as per plat recorded in Plat Book 237, Page 29 of Fulton County, Georgia Records, which plat is incorporated herein and made a part hereof by reference.
Said legal description being controlling, however, the Property is more commonly known as: 4002 Carisbrook Drive, Union City, GA 30291

Deed Book 57128 Pg 260

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

# EXHIBIT "G"

Attached hereto

Fulton County Magistrate Court
***E-FILED***TM
Date: 1/25/2017 2:27:49 PM
Cathelene Robinson, Clerk
17ED022452

IN THE MAGISTRATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TONY L. WARE
_____
P.O. Box 150524, Atlanta, Georgia 30315
_____
Plaintiff(s) Name, Address

vs.

Pine State Mortgage Corp, MidFirst Bank &
_____
Mortgage Electronic Registration Systems, Inc.
_____
Defendant(s) Name, Address  4002 Carisbrook Drive, Union City, Georgia 30291

DISPOSSESSORY PROCEEDING AGAINST TENANT

AFFIDAVIT    17ED022452

Personally appeared the undersigned affiant who on oath says that affiant is (owner), (attorney at law), (agent) for Plaintiff(s) herein, and that Defendant(s) is/are in possession as tenant of premises at the address as stated above, in Fulton County, the property of said Plaintiff(s). Plaintiff(s) attest(s) that there are no other person(s)/entity(ies) or known occupant(s) with whom Plaintiff(s) has/have a landlord tenant relationship. FURTHER THAT: (check applicable claim(s)):

[ ] tenant fails to pay the rent which is now past due;

[ ] tenant holds the premises over and beyond the term for which they were rented or leased to tenant;

[ ] tenant is a tenant at sufferance;

[ ] Other: The tenants are illegally holding possession of property without legal authority at this time ___ ; and

THAT Plaintiff(s) is/are entitled to recover any and all rent that may come due until this action is finally concluded. Plaintiff(s) desires and has demanded possession of the premises and Defendant(s) has/have failed and refused to deliver said possession. WHEREFORE, Plaintiff(s) demand(s) : (a) possession of the premises; (b) past due rent of

$ -0- _____ ; (c) rent accruing up to the date of judgment or vacancy at the rate of

$ -0- _____ per day. (Calculate daily rental rate, if seeking rent accruing to date of judgment or vacancy.)

(d) other: The Plaintiff as served a demand for possession pursuant to Georgia law O.C.G.A. 44-7-50(a) _____

Sworn to and subscribed before me,
this 25th day of Jan ___ 20 17    X _____    (404) 944-9638

_____    Affiant [ ] Owner [✔] Attorney at Law [ ] Agent
Magistrate or Deputy Clerk                    Tony L. Ware  Email: tonylware@yahoo.com

SUMMONS -- To the Marshall of the Magistrate Court or his lawful deputies:
GREETINGS: The Defendant(s) is/are commanded and required to file an answer to said affidavit in writing or orally in person at the Magistrate Court of Fulton County, Georgia on or before the seventh (7th) day after the date of service of this affidavit and summons. If such answer is not made, a Writ of Possession and/or Judgment shall issue as provided by law. Witness the Honorable Chief Magistrate of said Court.                                        1/25/2017

This _____ day of _____, 20 _____.    _____
                                                        Magistrate or Deputy Clerk

WRIT OF POSSESSION

To the Marshall of Fulton County or his lawful deputies: You are hereby commanded to remove said Defendant(s), and any other person(s)/entities whose presence upon the premises is through the tenancy of Defendant(s) together with Defendant(s)/their property thereon from said premises and to deliver full and quiet possession of the same to the Plaintiff(s) herein effective: 1. (Instanter); or 2. (On _____, 20 _____; or,

3. Pursuant to the terms of consent judgment filed herewith dated _____, 20 _____.

This _____ day of _____, 20 _____.    _____
                                                        Magistrate

MAG 30-02 DISPOSSESSORY PROCEEDING

EXHIBIT
G



## Atlanta Legal Research Group ™

**VIA- PERSONAL HAND DELIVERY**

January 23ᴿᴰ, 2017

Pine State Mortgage Corporation, Tenant
MidFirst Bank, Tenant and
Mortgage Electronic Registration System, Inc. and All Others
4002 Carisbrook Drive
Union City, Georgia 30291

Reference:   **4002 Carisbrook Drive**
**Union City, Georgia 30291**

### NOTICE AND DEMAND FOR POSSESSION OF PROPERTY

To Whom It May Concern and All Others Tenants:

Notice is given pursuant to O.C.G.A. § 44-7-50(a) that I am demanding full possession of the real property that is known as 4002 Carisbrook Drive, Union City, Georgia 30291 which you may be in illegal possession after a fraudulent foreclosure sale of said real property by MidFirst Bank through its officers, agents and attorneys.

The so-called Security Deed that was given to Mortgage Electronic Registration System, Inc. and later assigned to CitiMortgage, Inc. is a forgery and cannot pass any legal title. Therefore, any foreclosure done based upon such forged Security Deed is null and void as a matter of Georgia law.

Now therefore, if any of you are not in legal or actual possession of said property, you are required to contact my office within (24) hours from date of this notice and demand being posting upon the property door and by us sending it by United States Mail. Your failure to respond within the time from date of this notice and demand will deem you to be legal tenants at sufferance and I shall dispose and evict you from the property as such in accordance with Georgia law, O.C.G.A. § 44-7-50(a). You have within (24) hours to respond to this demand. Please govern yourself accordingly.

Respectfully Submitted,

*Dr. Tony L. Ware, Owner*

**EXHIBIT**
**" A "**

P.O. Box 150524 / Department of Law
Atlanta, Georgia 30315-0188
E-mail: tonylware@yahoo.com

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

# EXHIBIT "H"

Attached hereto

Fulton County Magistrate Court
\*\*\*E-FILED\*\*\*TM
Date: 2/8/2017 2:26:49 PM
Cathelene Robinson, Clerk
17ED022452

## IN THE MAGISTRATE COURT OF FULTON COUNTY

### STATE OF GEORGIA

TONY L. WARE,
    Landlord/Plaintiff,

v.

PINE STATE MORTGAGE CORP.,
MIDFIRST BANK, MORTGAGE
ELECTRONIC REGISTRATIONS
SYSTEM, INC., AND ALL OTHERS,
    Tenants/Defendants.

Civil Action File No: 17ED022452

### DEFAULT ORDER AND JUDGMENT

This matter is before the Court on Plaintiff's Motion for Default Judgment filed on February 2, 2017. This action was served via Tack and Mail on January 25, 2017. Defendant failed to file a timely Answer. Therefore, Plaintiff's Default Judgment is granted and a writ of possession shall issue *instanter*. Plaintiff's request for a monetary award against Defendant is denied as Georgia law precludes a monetary judgment in default when there is no personal service. O.C.G.A. § 44-7-51(c).

THIS 6TH DAY OF FEBRUARY, 2017.

SHUKURA I. MILLENDER, JUDGE
FULTON COUNTY MAGISTRATE COURT

EXHIBIT
" H "