IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TONY L. WARE,

      Plaintiff pro se,

  v.

PINE STATE MORTGAGE CORP.,
and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

      Defendants.

CIVIL ACTION FILE

NO. 1:17-CV-01313-MHC-WEJ

**FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on a Motion to Remand [10] filed by plaintiff pro se, Tony Ware.  For the reasons explained below, the undersigned **RECOMMENDS** that said Motion be **GRANTED**.

## I.   BACKGROUND

Plaintiff pro se, Tony L. Ware, filed a Verified Complaint [1-1] in the Superior Court of Fulton County, Georgia against Pine State Mortgage Corp. ("PSMC") and Mortgage Electronic Registration System, Inc. ("MERS") on March 13, 2017.  In that Complaint, plaintiff alleges that on August 12, 2003, Mrs. Anonette Ferrell (a non-party) received a mortgage loan from PSMC on property

located at 4002 Carisbrook Drive, Union City, Georgia 30291. (Compl. ¶¶ 11-12.)  On that same date, she conveyed a security deed to MERS. (See Compl. Ex. B [1-1], at 39-46.)  Mr. Ware alleges that Ms. Ferrell was rushed, tricked, and fraudulently induced into signing over the security deed to MERS.   (Compl. ¶ 13.)  He contends that the fraud by PSMC amounted to constructive forgery when Ms. Ferrell signed the security deed without a witness and a notary present. (Id. ¶ 14.)  According to the Complaint, when Ms. Ferrell signed the security deed, she neither saw, spoke with or appeared before the alleged notary who notarized it, and no witnesses saw her sign the security deed. (Id. ¶ 15.)  Plaintiff further alleges that the security deed was altered without the knowledge or authority of Ms. Ferrell by the addition of the signature of an unknown witness. (Id. ¶ 16.)  Plaintiff further contends that PSMC's alteration of the security deed was unknown to both Ms. Farrell and himself until February 7, 2017. (Id. ¶ 17.)[1]

The Complaint contains an initial eleven Counts:  Wrongful foreclosure sale under forged deed (Count One); fraud and forgery of security deed (Count Two); fraud and forgery upon plaintiff (Count Three); bill of peace in equity

---

[1] Because ¶¶ 18-24 of the Complaint repeat the allegations made above, they are not summarized here.

(Count Four); conspiracy to commit a crime (Count Five); gross negligence (Count Six); Georgia and Federal[2] RICO Racketeering (Count Seven); bad faith, malice, and willful misconduct (Count Eight); trespass against property (Count Nine); improper solicitation of money (Count Ten); and paralegal fees and litigation expenses (Count Eleven).

The Complaint then alleges that Mr. Ware became "legal owner" of the subject property by virtue of a "Special Warranty Deed," which Ms. Ferrell signed on January 23, 2017. (See Compl. ¶¶ 92 & Ex. C [1-1], at 55-56; see also Compl. ¶ 26.)[3] Because of this deed, Mr. Ware seeks declaratory relief (First

---

[2] On April 14, 2017, Mr. Ware filed a "Notice of Partial Dismissal Without Prejudice of Plaintiff's Federal RICO Claims Referred to in Error in the Complaint" [2]. In that filing, plaintiff states that he erroneously inserted the words "Federal" into the heading of his RICO Count and that he did not intend to assert any claims under federal law. Review of Count Seven shows the only mention of "Federal" was in its heading; no Federal RICO claim is alleged in the body of Count Seven. (See Compl. ¶¶ 53-71.)

[3] MERS asserts that plaintiff has no standing to sue because there was a foreclosure sale and execution of a deed under power on December 16, 2016. (Def.'s Mot. to Dismiss [14], at 5.) Thus, MERS argues that Ms. Ferrell had nothing to convey in the Special Warranty Deed that she executed after that date. However, plaintiff argues that PSMC's forgery of the security deed passed no title to MERS. (See Pl.'s Mot. to Strike [17] 3, ¶ 7, citing, inter alia, Aurora Loan Servs., LLC v. Veatch, 710 S.E.2d 744, 745 (Ga. 2011).) Thus, plaintiff contends that MERS is the one that could not convey title to the entity which eventually foreclosed.

Claim for Relief); a bill of peace in equity (Second Claim for Relief); and a claim for "quia timet in equity" (Third Claim for Relief).   (See Compl. ¶¶ 91-113.) Plaintiff seeks recovery of millions of dollars.  (See Pl.'s Prayer for Relief.)

MERS removed the case to this Court on April 12, 2017.  (See Notice of Removal [1].)[4]  PSMC did not join in the removal because, as MERS shows by citing an exhibit plaintiff attached to the Complaint, PSMC was a Georgia corporation until it was administratively dissolved by the Georgia Secretary of State on September 3, 2012.  (See Compl. Ex. A [1-1], at 25-37.)[5]  MERS contends that plaintiff fraudulently joined PSMC to defeat complete diversity; thus, its citizenship should be disregarded.  (See Notice of Removal ¶¶ 14-35.) Mr. Ware disagrees in his Motion to Remand, asserting that he may sue a

---

[4] The Notice of Removal asserts existence of both a federal question (i.e., the Federal RICO claim) and complete diversity between plaintiff and MERS, which MERS contends is the only properly joined defendant.  (Notice of Removal ¶¶ 9, 11.)  Given the plaintiff's apparent clerical error in listing Federal RICO in the caption to Count Seven and his subsequent filing of the Notice of Partial Dismissal [2] (see supra note 2), MERS now asserts only that removal was proper on the basis of complete diversity.  (See MERS's Resp. [14] 2.)

[5] Under the Georgia Business Corporation Code, a corporation may be dissolved voluntarily (O.C.G.A. §§ 14-2-1401 through 1410), administratively by the Secretary of State for, inter alia, failing to deliver its annual registration (id. §§ 1420 through 1423), which is what happened here, or through judicial action (id. §§ 14-2-1430 through 1433).

dissolved corporation, and arguing that this case must be sent back to the Superior Court of Fulton County because there is not complete diversity of citizenship among the parties (i.e., he is a Georgia resident; PSMC was a Georgia corporation; and MERS is a Delaware corporation with its principal place of business in Virginia).

## II.   ANALYSIS

Federal courts owe a "strict duty" to exercise the limited jurisdiction Congress confers on them.  Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996); see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (remarking that federal courts "possess only that power authorized by Constitution and statute").  The law favors remand where federal jurisdiction is not absolutely clear, and courts must construe removal statutes narrowly. Miedema v. Maytag Corp., 450 F.3d 1322, 1329 (11th Cir. 2006).

When, as here, the purported statutory basis for federal jurisdiction is 28 U.S.C. § 1332(a)(1)—a civil action satisfying the amount-in-controversy requirement and between "citizens of different States"—there must be "complete diversity of citizenship.  That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."  Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978).  Except where Congress has

5

granted federal courts exclusive jurisdiction, the plaintiff is the "'master of the complaint' and [is] 'free to avoid federal jurisdiction' by structuring [his] case to fall short of a requirement of federal jurisdiction." Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013) (internal citation omitted).

One way that a plaintiff may structure his case is by joining a diversity-destroying defendant. However, an action is removable if joinder of a non-diverse party is fraudulent. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). The presence of a fraudulently joined, non-diverse defendant does not defeat diversity jurisdiction because—once the court determines joinder was fraudulent—it "must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." Florence v. Crescent Res., LLC, 484 F.3d 1293, 1297 (11th Cir. 2007). So long as joinder of a resident, non-diverse defendant is not fraudulent, this Court lacks subject-matter jurisdiction and must remand this action to state court. See 28 U.S.C. §§ 1441(b), 1447(c); Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

There are three situations in which joinder may be deemed fraudulent: (1) when there is no reasonable possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) when there is no

6

real connection to the claim and the resident (non-diverse) defendant.  See Legg v. Wyeth, 428 F.3d 1317, 1325 (11th Cir. 2005); Triggs, 154 F.3d at 1287.

The parties agree that the first type—the "no reasonable possibility" category—is at issue here.  Under that standard, "[i]f there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  Triggs, 154 F.3d at 1287 (quotations omitted).  The touchstone for analysis is whether there is a potential cause of action.  Legg, 428 F.3d at 1325 n.5 (holding that the potential must be more than merely theoretical).

The removing party bears the burden of proving fraudulent joinder, which is "a heavy one."  Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).  The determination is based on the plaintiff's pleadings at the time of removal, plus any affidavits or deposition transcripts submitted by the parties, resolving all questions of fact in favor of the plaintiff.  Id.  In this way, the inquiry resembles that on a motion for summary judgment; however, it is different in that the court may not "weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."  Id.  A court must consider "the factual allegations in the light most favorable to the plaintiff and must resolve any

7

uncertainties about state substantive law" in the plaintiff's favor.  Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1333 (11th Cir. 2011) (per curiam) (quoting Crowe, 113 F.3d at 1538).  "Remand is required so long as the plaintiff has even 'an arguable claim,'—that is, 'if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint.'"  Manley v. Ford Motor Co., 17 F. Supp. 3d 1375, 1381 (N.D. Ga. 2014) (quoting Florence, 484 F.3d at 1298-99).

MERS contends that there is no reasonable possibility that plaintiff can establish any of his claims against PSMC because: (a) he cannot sue a corporation that was dissolved in 2012; (b) he lacks standing to assert any claim to the subject property (see supra note 3); and (c) all of his claims against PSMC fail as a matter of law.  (Def.'s Resp. [14] 3.)[6]

Of MERS's three contentions, only the one denominated (a) can be considered here.  This is because, as stated above, the Court cannot not "weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one

---

[6] MERS also argues that plaintiff does not plead any of his claims against PSMC specifically.  (Def.'s Resp. [14] 3.)  That argument is not well taken. While MERS may disagree with those claims, plaintiff makes them with some specificity.  (See, e.g., Compl. ¶¶ 11-15, 18, 20-24.)

8

under state law." Crowe, 113 F.3d at 1538; see also B., Inc. v. Miller Brewing Co., 663 F.2d 545, 548-49 (5th Cir. 1981) ("[T]he trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."). Thus, the Court would have to assess the merits of the case to determine whether plaintiff has standing (i.e., MERS's argument (b)) or whether his claims fail as a matter of law (i.e., MERS's argument (c)). The determination of whether plaintiff can sue an administratively-dissolved corporation like PSMC will not require the Court to examine the merits of his claims. If he can, then this case must be remanded as complete diversity is lacking.

In support of its argument that plaintiff cannot sue a dissolved corporation, MERS cites cites Gas Pump, Inc. v. General Cinema Beverages of North Florida, Inc., 436 S.E.2d 207 (Ga. 1993), and relies upon its holding that, when read together, O.C.G.A. §§ 14-2-1405, 14-2-1421, and 14-2-1422 provide a period of two years in which an administratively-dissolved corporation can initiate activities necessary to wind up and liquidate its business. Id. at 208. Because the Secretary of State administratively dissolved PSMC in 2012, MERS asserts that PSMC ceased to be a legal entity in 2014, leaving plaintiff with no reasonable possibility of recovery against it in a suit filed in 2017. Accordingly, MERS

argues that PSMC should be dismissed as fraudulently joined. (MERS's Resp. 4.)

However, defendant reads too much into the Gas Pump decision. The question certified there to the Georgia Supreme Court by the United States Court of Appeals for the Eleventh Circuit was whether an administratively-dissolved corporation had the capacity to file a federal antitrust action. 436 S.E.2d at 208. The Georgia Supreme Court generally answered the question in the negative, stating that this administratively-dissolved corporation lacked capacity to bring the antitrust action because its time to act had expired. Id. The court explained its reasoning as follows:

> As set out above, § 14-2-1421 provides for the continuation of the existence of an administratively-dissolved corporation and § 14-2-1422 gives the administratively-dissolved corporation two years in which it may seek reinstatement. The expiration of the time for reinstatement puts a stamp of finality on the demise of the corporation—it can no longer be resuscitated. The unavoidable conclusion is that the corporation cannot, after the time its demise is deemed complete, initiate any activity. To permit a suit to be initiated in the name of the dissolved corporation after that time would be to sanction a form of legal necromancy, reanimation of the empty husk of a dead corporate entity. We reject, therefore, Gas Pump's assertion that the legal existence of an administratively-dissolved corporation continues indefinitely and without practical limit on its ability to conduct any business which it asserts is necessary to winding up its affairs. Read together, §§ 14-2-1405, 14-2-1421, and 14-2-1422 provide a period of two years in which an administratively-dissolved corporation can initiate activities

10

necessary to the winding up and liquidation of its affairs and business. If it is not reinstated during that period, it can take no further action.

Id. at 208-09.

As is clear from the above-quoted excerpt, Gas Pump dealt with an administratively-dissolved corporation's ability to sue—not the ability of someone harmed by the dissolved corporation to sue it. In fact, Georgia law preserves a plaintiff's right to sue a dissolved corporation as follows:

> (a) The dissolution of a corporation either as a result of the expiration of its charter or for any other cause shall not bring about its total extinction nor operate to extinguish any demand or cause of action against it in favor of any person whomsoever, whether arising from contract or tort[.]
>
> . . .
>
> (b)    Actions for the enforcement of any demand or cause of action due by a dissolved corporation may to a like extent be instituted and enforced against it in any court having jurisdiction thereof at the time of its dissolution; and service thereon may be perfected either by seizure of the property of such corporation, by any form of legal process, or by serving with process issued upon said actions any person who, as an agent or officer of such corporation, was subject to be served as its officer or agent at the time of such dissolution.

O.C.G.A. § 14-4-161(a)-(b).

As the Georgia Supreme Court held in Gas Pump, "'A corporation administratively dissolved continues its corporate existence but may not carry on

11

any business except that necessary to wind up and liquidate its business and affairs under Code Section 14-2-1405.'" Gas Pump, 436 S.E.2d at 208 (quoting O.C.G.A § 14-2-1421(c)). Thus, what a dissolved corporation like PSMC can do is governed by O.C.G.A. § 14-2-1405, which provides as follows:

A corporation that has filed a notice of intent to dissolve continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:

(1)    Collecting its assets;

(2)    Disposing of its properties that will not be distributed in kind to its shareholders;

(3)    Discharging or making provision for discharging its liabilities;[7]

(4)    Distributing its remaining property among its shareholders according to their interests; and

(5)    Doing every other act necessary to wind up and liquidate its business and affairs.

---

[7] For a corporation to discharge or make provisions for discharging its liabilities, the Code contains two other relevant provisions: O.C.G.A. § 14-2-1406, which deals with "Known claims against corporations in dissolution," and O.C.G.A. § 14-2-1407, which deals with "Unknown claims against corporation in dissolution." Since Mr. Ware's claim, which he asserts was discovered on February 7, 2017 (Compl. ¶ 17), would have been unknown when PSMC was administratively dissolved in 2012, the latter provision would govern.

O.C.G.A § 14-2-1405.

For purposes of this analysis, O.C.G.A. § 14-2-1407 is pivotal.  (See supra note 7.)   Under this provision, if the corporation, its officer, directors, and shareholders, want protection from unknown claims, the corporation must "request" that such persons present them in accordance with O.C.G.A. § 14-2-1407(b).  See O.C.G.A. § 14-2-1407(a).  Such a request must:

> (1)    Describe the information that must be included in a claim and provide a mailing address where the claim may be sent; and
>
> (2)    State that, except for claims that are contingent at the time of the filing of the notice of intent to dissolve or that arise after the filing of the notice of intent to dissolve, a claim against the corporation not otherwise barred will be barred unless a proceeding to enforce the claim is commenced within two years after the publication of the notice.

O.C.G.A. § 14-2-1407(b).

This Code Section then contains a series of quasi-statutes of limitation, which provide as follows:

> If a corporation that has filed a notice of intent to dissolve publishes a newspaper notice containing the information specified in subsection (b) of this Code section, all claims not otherwise barred will be barred unless the claimant commences a proceeding to enforce the claim against the dissolved corporation within two years after the publication date of the newspaper notice except:

13

(1)    Claims that are contingent at the time of the filing of the notice of intent to dissolve; and

(2)    Claims that arise after the filing of the notice of intent to dissolve.

O.C.G.A. § 14-2-1407(c).

Finally, with regard to the two types of claims excepted above, the Code provides as follows:

If a corporation in dissolution publishes a newspaper notice containing the information specified in subsection (b) of this Code section, a claim not otherwise barred of a claimant whose claim is contingent or based on an event occurring after the filing of the notice of intent to dissolve is barred against the corporation, its shareholders, officers, and directors unless the claimant commences a proceeding to enforce the claim against the dissolved corporation within two years after the date of filing of articles of dissolution or five years after the date of publication in accordance with subsection (b) of this Code section, whichever is later.

O.C.G.A. § 14-2-1407(d).

The purpose of this statutory scheme is described in the following comments by the Code Revision Commission:

Earlier versions of the Model Act did not recognize the serious problem created by possible claims that might arise long after the dissolution process was completed and the corporate assets distributed to shareholders.  Most of these claims were based on personal injuries occurring after dissolution but caused by allegedly defective products sold before dissolution, but they also involved negligence for which the statute of limitations did not begin to run until the negligence was discovered (e.g., a surgical instrument left

14

inside the patient).   The application of the former provisions of Georgia law to this problem led to confusing and inconsistent results. The problems raised by this type of litigation are intractable; on the one hand, the application of a mechanical two-year limitation period to a claim for injury that occurs after the period has expired involves obvious injustice to the plaintiff.   On the other hand, to permit these suits generally makes it impossible ever to complete the winding up of the corporation, make suitable provisions for creditors, and distribute the balance of the corporate assets to the shareholders.

The solution adopted in Section 14-2-1407 with respect to claims that are contingent at the time of the publication of the notice, or that arise after the notice, the effect of the Code is to continue liability for five years after the corporation publishes notice of intent to dissolve, or two years after final dissolution, whichever is later.  (Subsection (d).)  The approach of prior law, under § 14-2-293 was also to cut off claims two years after the date of dissolution.  It is recognized that a five year cut-off is itself arbitrary, but it is believed that the great bulk of post dissolution claims will arise during this period.  This provision is therefore believed to be a reasonable compromise between the competing considerations of providing a remedy to injured plaintiffs and providing a period of repose after which assets distributed by dissolved corporations to their shareholders are free of all claims and shareholders may hold them secure in the knowledge that they may not be reclaimed.

Subsection (a) permits a corporation to publish a notice to claimants in its notice of intent to dissolve published in accordance with Section 14-2-1403.1, and subsection (b) sets out the required contents of the notice.

Subsection (c) provides that creditors who hold known and non-contingent claims not otherwise barred by applicable statutes of limitations will be barred two years after the publication date, unless they commence a proceeding to enforce the claim during that period. The reference to contingent claims is to claims that are contingent with respect to corporate liability, and not simply unliquidated as to

15

amount.  Unliquidated claims can be reduced to a judgment during the winding up process.  Thus claims arising both during the winding up period and after the filing of articles of dissolution are excluded from these limitations.

Subsection (d) provides the relevant statute of limitations for contingent claims and those arising after the filing of the notice of intent to dissolve.  This bars suits against the officers and directors of the corporation as well as against the corporation itself.  Unknown and contingent claimants are thus given at least five years from the publication of notice of intent to dissolve to bring their claims.  They are further protected by being allowed to bring claims for two years after filing of articles of dissolution, if this is a later date.  . . . .

O.C.G.A. § 14-2-1407 (comments).

As shown above, the key to barring such contingent or future claims is filing of articles of dissolution or publishing a conforming newspaper notice. MERS has not satisfied its heavy burden of showing that PSMC did either one. Construing the absence of such evidence in plaintiff's favor, no such filing or publishing of notice ever occurred.  Thus, PSMC has no protection against unknown claims under the Georgia Business Corporation Code, and plaintiff has a reasonable possibility of establishing his claims against PSMC.  Accordingly, PSMC was not fraudulently joined and this Court cannot disregard its Georgia citizenship.

While Mr. Ware may have little luck recovering against PSMC, that is immaterial to fraudulent joinder analysis.  "[A] plaintiff's motivation for joining a

16

defendant is not important as long as the plaintiff has the intent to pursue a judgment against the defendant." Triggs, 154 F.3d at 1291. As long as a complaint states a cause of action and plaintiff intends to obtain a judgment against the named defendant, plaintiff has "a right to select the forum, to elect whether to sue joint tortfeasors, and to prosecute [his] own suit in [his] own way to a final determination." Samples v. Conoco, Inc., 165 F. Supp. 2d 1303, 1320 (N.D. Fla. 2001) (finding homeowners' claims against resident wood treatment company that had been defunct for eight years, had not operated for sixteen years, lacked living corporate officers, and had over $291,000 in unsatisfied judgments entered against it did not make joinder fraudulent, even if homeowners could not collect judgment). Plaintiff is the master of his Complaint and may pursue a judgment, even where a judgment is unlikely to result in recovery.

## III.   **CONCLUSION**

For the reasons explained above, the undersigned **RECOMMENDS** that plaintiff's Motion to Remand [10] be **GRANTED**, and this case returned to the Superior Court of Fulton County, Georgia.[8]

---

[8] Because remand will moot the other pending motions in this case, the undersigned does not address defendant MERS's Motion to Dismiss [8];

17

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**SO RECOMMENDED,** this 13th day of July, 2017.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

plaintiff's Motion to Strike and Motion to Remand [17]; plaintiff's Motion for Clerk's Entry of Default [21]; and defendant MERS's Motion to Strike [25].

18